{¶ 1} Because I would sustain the objections of respondent and deny the writ of mandamus, I respectfully dissent. Pursuant to Ohio Adm. Code 4125-1-01(D)(1)(c), "[a] good faith effort to search for suitable employment which is comparably paying work is required of those * * * seeking working-wage loss who have not returned to suitable employment which is comparably paying work * * *." Therefore, regardless of whether a claimant seeks wage loss compensation for diminishment in wages due to a reduction in the number of hours worked, or for diminishment in wages due to a lower weekly rate of pay, claimant bears the burden of establishing a good faith effort to eliminate the wage loss by seeking suitable employment which is comparably paying work. If this burden is not met, claimant is simply not eligible for wage loss compensation. Ohio Adm. Code 4125-1-01(D).
 {¶ 2} To the extent that relator sought wage loss compensation for weeks when relator worked less than 40 hours, relator had the burden to show a good faith job search to establish eligibility for wage loss compensation. Likewise, to the extent that relator sought wage loss compensation for weeks when relator worked 40 hours, but earned less than her previous employment, relator still had the burden to show a good faith effort to find suitable employment which is comparably paying work. Because there is evidence to support the commission's determination that relator failed to carry her burden, the commission did not abuse its discretion in finding that relator was not eligible for wage loss compensation.
 {¶ 3} The magistrate's decision correctly notes that the statutory scheme also contemplates the possibility of a wage loss award if the adjudicator determines that an eligible claimant has voluntarily limited the number of hours he or she works. Ohio Adm. Code 4125-1-01(F)(3)(b). Such an award is calculated based upon the difference between the hourly rate claimant earned in his or her former position of employment, and the hourly rate he or she earned for hours worked in the subsequent part-time job. However, Ohio Adm. Code 4125-1-01(F)(3)(b), expressly provides that a claimant must be eligible for wage loss compensation before this provision is implicated.
 {¶ 4} As noted previously, one of the eligibility requirements for any wage loss compensation is evidence demonstrating a good faith effort to eliminate the wage loss. Therefore, in the case of a claimant determined by the adjudicator to have voluntarily limited the number of hours worked, claimant still has the burden of demonstrating a good faith effort to find suitable employment which is comparably paying work. If claimant fails to meet his or her burden, the wage loss compensation must be denied. Ohio Adm. Code 4125-1-01(D).
 {¶ 5} Here, because there is evidence to support the commission's determination that relator failed to carry her burden in establishing her eligibility, there was no need for the commission to address the applicability of Ohio Adm. Code 4125-1-01(F)(3)(b). Relator was simply not eligible for wage loss compensation and the commission properly denied relator's first application. Moreover, respondent was not required to produce any evidence to support its assertion that claimant failed to meet her burden. Ohio Adm. Code 4125-1-01(D).
 {¶ 6} With respect to relator's second application, respondent again argues that, because relator failed to submit sufficient evidence demonstrating a good faith effort to eliminate the wage loss, the commission did not abuse its discretion in denying the wage loss claim. Again, I believe respondent's objection regarding relator's eligibility for wage loss compensation is well-taken. Given relator's failure to carry her burden in establishing her eligibility for wage loss compensation, the commission did not abuse its discretion in denying relator's second application. Therefore, I respectfully dissent.
 IN MANDAMUS {¶ 7} In this original action, relator, Renee M. Bowen, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its orders denying her applications for wage loss compensation, and to enter new orders granting the applications.
Findings of Fact:
 {¶ 8} On May 31, 2000, relator sustained an industrial injury while employed as a "packer" in a warehouse operated by respondent Do It Best Corp. ("Do It Best"). Her industrial claim is allowed for: "sprain lumbosacral; sprain sacroiliac; L5-S1; herniated nucleus pulposis," and is assigned claim number 00-419192.
 {¶ 9} 2. Apparently, relator received temporary total disability ("TTD") com-pensation until September 2000, and then she received living maintenance compensation until March 2001. (See commission's brief at 1; employer's brief at 5.)
 {¶ 10} 3. On March 12, 2001, relator began working for Spherion Staffing ("Spherion") at $9 per hour. Spherion payroll records show that relator was employed for the following number of hours for the following weeks[1]:
 {¶ 11} "Hours Worked Week Ending
 "40.00 3/18/01 "38.50 3/25/01 "31.50 4/01/01 "39.75 4/08/01 "36.75 4/15/01"
 {¶ 12} 4. On April 14, 2001, relator began working for Integrity Staffing Services ("Integrity") at $8 per hour because work was no longer available through Spherion. Cancelled checks and corresponding check stubs from Integrity show that relator was employed for the following number of hours for the following weeks[2]
 {¶ 13} "Hours Worked Week Ending
 "8.00 4/29/01 "23.50 5/06/01 "21.50 5/13/01 "21.25 5/20/01 "24.50 5/27/01 "21.25 6/10/01 "27.50 6/17/01 "24.50 6/24/01 "27.75 7/01/01 "21.75 7/08/01 "23.75 7/15/01 "21.75 7/22/01 "23.25 7/29/01 "20.00 8/05/01 "20.00 8/12/01 "12.50 8/19/01 "34.00 8/26/01 "20.00 9/02/01 "32.00 9/09/01 "38.50 9/16/01 "40.00 9/23/01 "40.00 10/21/01 "40.00 10/28/01 "40.25 11/04/01 "24.00 11/18/01 "24.00 11/25/01 "37.50 12/02/01 "32.00 12/13/01 "28.00 12/20/01 "31.00 12/27/01 "16.75 1/03/02 "21.75 1/10/02"
 {¶ 14} 5. On July 6, 2001, relator filed an application for wage loss compensation. On her application, relator requested wage loss compensation beginning March 1, 2001 to the "present." On the application, relator indicated that she was paid $12.89 per hour at Do It Best. However, Do It Best records indicate that relator was paid an hourly regular rate of $12.52. Do It Best records also show that during the two months prior to her date of injury, relator typically worked at least a 40-hour week and often worked overtime. Her overtime rate was $18.78 per hour.
 {¶ 15} 6. In support of her application, relator submitted a report, dated June 26, 2001, from her treating chiropractor Marc Miller, D.C. The report is a form completed by Dr. Miller. The form asks the doctor to indicate by marking a box the claimant's physical capacity during an eight-hour day. On the June 26, 2001 report, Dr. Miller indicates that relator can sit for eight hours, stand for six hours, and walk for two hours. She can lift or carry up to 20 pounds "continuously," lift up to 25 pounds "frequently," lift up to 50 pounds "occasionally." She can not lift over 51 pounds.
 {¶ 16} On the form, Dr. Miller states that the last medical examination occurred July 19, 2000, and that the restrictions are temporary. To the query, "if temporary give an opinion as to the expected duration of the restrictions," Dr. Miller wrote "as the direct cause of the pain cannot be found, it is difficult to [state] time for recovery."
 {¶ 17} 7. The record also contains a narrative report, dated October 4, 2000, from Dr. Miller stating:
 {¶ 18} "After reviewing the functional capacity exam performed on Renee Bowen and comparing it to the job descriptions given by Do It Best, it is my opinion that none of the job descriptions fit within her capabilities. Any jobs which do not fit within that capacity could possibly exacerbate her condition if she tried to perform them. * * *"
 {¶ 19} 8. Following an October 23, 2001 hearing, a district hearing officer ("DHO") issued an order denying the wage loss application. The DHO's order states:
 {¶ 20} "The Hearing Officer finds that the claimant's request for wage loss compensation from 03/12/2001 to 07/15/2001 is denied.
 {¶ 21} "This Hearing Officer finds that pursuant to wage documentation and payroll information, claimant only worked four hours a day during the requested period.
 {¶ 22} "The Hearing Officer finds that pursuant to medical restrictions placed upon her by her treating doctor, Dr. Miller, D.C., the claimant could sit for eight hours, stand for six hours and walk for two hours. She could lift from 25 to 50 pounds occasionally, up to 25 pounds frequently and under 25 pounds continuously. There is no documentation in file indicating claimant could only work four hours per day.
 {¶ 23} "The Hearing Officer notes that claimant has not attempted to seek employment the remaining four hours of the day; therefore, her request for the payment of wage loss compensation is denied."
 {¶ 24} 9. Relator administratively appealed the DHO's order of October 23, 2001.
 {¶ 25} 10. Following a December 13, 2001 hearing, a staff hearing officer ("SHO") issued an order affirming and adopting the DHO's order. The SHO's order further states:
 {¶ 26} "The Staff Hearing Officer relies on the absence of evidence substantiating that the Claimant was limited to part-time work during the period of working wage loss at issue. The Hearing Officer also relies on the fact that the Claimant has failed to submit any job searches to substantiate her claim that she looked for full-time work when she got off from her part-time employment. Based upon the foregoing factual findings, the Staff Hearing Officer concludes that the Claimant has failed to establish that the wage loss was directly related to this claim."
 {¶ 27} 11. Relator administratively appealed the December 13, 2001 SHO's order. With her notice of appeal, filed December 27, 2001, relator submitted a six-page document. The first page, or cover page, is captioned "Job Search Progress." The second and third pages list the addresses of 14 employers where relator sent her résumé seeking a "secretary position." The fourth page lists the addresses of eight employers and is captioned "Job Interviews." However, Spherion and Integrity are among the eight employers listed. The fifth page contains several phone numbers and is captioned "Faxes Sent." The sixth page lists addresses of ten employers and is captioned "Phone Calls Made." There are several "not hiring" notations. There is no indication on the six-page document itself as to when the résumés and faxes were sent, or when the interviews occurred or when the phone calls were made.
 {¶ 28} 12. On January 9, 2002, another SHO mailed an order refusing relator's administrative appeal from the December 13, 2001 SHO's order.
 {¶ 29} 13. On January 16, 2002, relator filed a second application for wage loss compensation. On this application, relator requested wage loss compensation from July 15, 2001 to January 10, 2002.
 {¶ 30} 14. On April 26, 2002, relator submitted a five-page document containing a cover page captioned "Supplemental Information on Wage Loss." This document is essentially identical to the document filed December 27, 2001, except that the fifth page, captioned "Faxes Sent" is deleted.
 {¶ 31} 15. Relator again relied upon the June 26, 2001 report from Dr. Miller to support her second wage loss application. (See employer's brief at 13.)
 {¶ 32} 16. Following an April 26, 2002 hearing, a DHO issued an order denying wage loss compensation for the period July 16, 2001 to August 30, 2001, when relator was found to have worked part time. The DHO found that relator had failed to make "a good faith effort to search for suitable employment to supplement her part time employment." However, the DHO granted wage loss compensation from September 1, 2001 to January 10, 2002 inclusive, when relator was found to have worked full time.
 {¶ 33} 17. The employer administratively appealed the DHO's order of April 26, 2002. Following a June 17, 2002 hearing, an SHO issued an order vacating the DHO's order of April 26, 2002, and denying the second application for wage loss compensation. The SHO's order of June 17, 2002 states:
 {¶ 34} "The Hearing Officer finds that the wage loss request for [the] periods [sic] 7/16/2001 to 8/30/2001 is denied as the claimant did not submit any documentation of a good faith effort to search for employment to supplement her part time position. The Hearing Officer finds that the requested wage loss compensation for the period 9/01/2001 through 1/10/2002 is also denied. The Hearing Officer finds that the only medical documentation involving restrictions to the claimant indicates a period [sic] of 6/26/2001. The Hearing Officer finds that the claimant has not conformed to Ohio Revised Code 4125.1-01 [sic] subsection C3 which indicates that supplemental medical reports regarding the ongoing status of the medical restrictions causally related to the allowed conditions in the claim must be submitted to the Bureau of Workers' Compensation once every 90 days after the initial application. The Staff Hearing Officer finds that the last document indicating the claimant's restrictions was dated 6/26/2001. Therefore the requested periods [sic] 9/01/2001 through 1/10/2002 is denied."
 {¶ 35} 18. Relator administratively appealed the SHO's order of June 17, 2002. On July 6, 2002, another SHO mailed an order refusing relator's administrative appeal.
 {¶ 36} 19. On August 14, 2002, relator, Renee M. Bowen, filed this mandamus action.
Conclusions of Law:
 {¶ 37} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 38} Two commission orders denying wage loss compensation are at issue in this action. The first order (SHO order of December 13, 2001) denies wage loss compensation from March 12, 2001 to July 15, 2001, based upon a finding that claimant worked "four hours a day" during this period and failed to search for additional employment when she was medically able to work full time.
 {¶ 39} The second order (SHO order of June 17, 2002) denies wage loss compensation for two periods. It denies wage loss compensation from July 16, 2001 to August 30, 2001, based upon a finding that relator failed to make a good faith search to supplement her part time employment. It denies wage loss compensation from September 1, 2001 to January 10, 2002, on grounds that relator failed to have Dr. Miller update his June 26, 2001 report as provided by Ohio Adm. Code4125-1-01(C)(3).
 {¶ 40} The two commission orders shall be separately addressed by the magistrate.
 {¶ 41} The commission abused its discretion by issuing its first order in which the SHO affirms and adopts the DHO's order. Those orders (SHO and DHO) indicate commission reliance upon Dr. Miller's June 26, 2001 report to support a finding that relator was not restricted to part-time work, but was medically able to perform full-time work within the restrictions of that report.
 {¶ 42} For the period March 12, 2001 to July 15, 2001, the first commission order finds that relator "only worked four hours a day" and that relator failed to seek employment for the remaining four hours of the day. On that basis, wage loss compensation was denied.
 {¶ 43} The commission's finding that relator "only worked four hours a day" is not supported by the documentary evidence in the record, and thus constitutes an abuse of discretion to the extent that the finding was applied to the entire period, i.e., March 12, 2001 to July 15, 2001.
 {¶ 44} The documentary evidence of record undisputedly shows that relator worked for two different employers during the period at issue with a dramatic difference in the number of hours worked per week. Relator worked for Spherion for five weeks, and during that time worked one week full time (40 hours) and other weeks at nearly full time (39.75 hours for the week ending April 8, 2001; 38.50 hours for the week ending March 25, 2001, as examples).
 {¶ 45} The commission's rules for the adjudication of wage loss compensation are set forth at Ohio Adm. Code 4125-1-01.
 {¶ 46} Ohio Adm. Code 4125-1-01(D)(1) provides that in considering a claimant's eligibility for wage loss compensation, the adjudicator shall consider "[t]he claimant's search for suitable employment."
 {¶ 47} Ohio Adm. Code 4125-1-01(D)(1)(c) provides in part:
 {¶ 48} "A good faith effort to search for suitable employment which is comparably paying work is required of those seeking non-working wage loss and of those seeking working-wage loss who have not returned to suitable employment which is comparably paying work[.] * * * A good faith effort necessitates the claimant's consistent, sincere, and best attempts to obtain suitable employment that will eliminate the wage loss. In evaluating whether the claimant has made a good faith effort, attention will be given to the evidence regarding all relevant factors including, but not limited to:
 {¶ 49} "* * *
 {¶ 50} "(iv) * * * [F]or a claimant seeking any amount of working wage loss, the amount of time devoted to making prospective employer contacts during the period for which working wage loss is sought as well as the number of hours spent working; while the adjudicator shall consider this comparison in reaching a determination of whether there was a good faith job search, the fact that the sum of the hours the claimant spent searching for work and working is not as many hours as were worked in the former position of employment shall not necessarily be dispositive[.]"
 {¶ 51} Ohio Adm. Code 4125-1-01(D)(3)(b), (c) and (d) provide:
 {¶ 52} "(b) The claimant's failure to seek suitable employment which would require him or her to work a greater number of hours than the former position of employment shall not be considered a voluntary limitation on income from employment.
 {¶ 53} "(c) The claimant's failure to work a greater number of hours per week than he or she worked in his or her former position of employment shall not be considered a voluntary limitation on income from employment.
 {¶ 54} "(d) If the claimant voluntarily works less than the number of hours per week he or she worked in the former position of employment, and this results in a wage loss, the claimant shall be considered to have voluntarily limited his present earnings, and the claimant's wage loss compensation shall be reduced pursuant to paragraph (F)(3) of this rule."
 {¶ 55} Ohio Adm. Code 4125-1-01(F)(3)(b) states:
 {¶ 56} "If the adjudicator finds that the claimant has returned to employment but has voluntarily limited the number of hours which he is working, and that the claimant is nonetheless entitled to wage loss compensation, the adjudicator, for each week of wage loss compensation requested by the claimant, shall determine: the number of hours worked by the claimant in the employment position to which he has returned, and the hourly wage earned by the claimant in the employment position to which he has returned. In such a case, the adjudicator shall order wage loss compensation to be paid at a rate of sixty-six and two-thirds per cent of the difference between:
 {¶ 57} "(i) The weekly wage the claimant would have earned in the former position of employment if the claimant had worked only the number of hours the claimant actually worked each week in the employment position to which the claimant returned; and
 {¶ 58} "(ii) The weekly amount the claimant actually earned in the employment position to which he returned.
 {¶ 59} "(iii) In situations where the adjudicator finds that the claimant has returned to employment and has voluntarily limited the number of hours which he is working, and that the claimant is nonetheless entitled to wage loss compensation, but that paragraphs (F)(3)(b)(i) and (F)(3)(b)(ii) of this rule are not directly applicable, the adjudicator shall have the discretion to establish a number of hours to be utilized in the calculation of wage loss compensation that is not unreasonable, unconscionable or arbitrary."
 {¶ 60} With respect to relator's five weeks of employment at Spherion where she was earning $9 per hour, much less than her $12.52 regular hourly rate at Do It Best, there is no contention from respondents in this action that relator voluntarily limited her income by seeking work for which she was underqualified. That is, there is no contention from respondents that relator was medically and vocationally qualified for higher paying work. Moreover, the commission's order does not indicate that there was any issue in that regard. The commission's order indicates that the issue was the number of hours relator worked, not the hourly rate of the work she chose to do.
 {¶ 61} Given the above analysis, it is clear that the commission failed to comply with its own rules in several respects, constituting an abuse of discretion.
 {¶ 62} Given that the number of hours per week that relator worked for Spherion is close to the number of hours she apparently worked at her former position of employment, it is difficult to see how relator can be required under the rules to search for employment to make up the difference. Had relator found a second job while working at Spherion, it would, in all probability, have required her to work more hours per week than she had worked at Do It Best. In any event, the commission failed to address this issue given the proximity between the number of hours worked at Spherion and the hours worked at her former position of employment.
 {¶ 63} Moreover, even if it can be found that relator wanted to work fewer hours than she had worked at her former position of employment, the commission failed to compute her wage loss under Ohio Adm. Code 4125-1-01(F)(3)(b), or at a minimum, explain why such computation was not applicable. Ohio Adm. Code 4125-1-01(F)(3)(b) makes it clear that even a claimant who has voluntarily limited the number of hours she is working as compared to the hours she worked at her former position of employment, can, nevertheless, be entitled to wage loss compensation.
 {¶ 64} Relator's employment at Integrity during that portion of the period of the first wage loss claim requires a slightly different analysis. Relator's employment at Integrity through the week ending July 8, 2001, can be accurately described as employment at which relator "only worked four hours a day." If the number of hours worked per week during that period is divided by five (for a five day work week) relator indeed only worked between four and five hours a day at Integrity.
 {¶ 65} Relator presented no evidence of a job search to the DHO or SHO who heard her first wage loss claim. Her six-page "Job Search Progress" document was filed after the SHO had rendered his decision denying the first wage loss claim. Thus, the commission had no documentary evidence of a job search before it when it denied the first wage loss claim. In short, relator could not successfully claim entitlement to wage loss compensation for any hours beyond those that she actually worked for Integrity. However, the commission again failed to apply Ohio Adm. Code 4125-1-01(F)(3)(b) or to explain why the computation rule is inapplicable.
 {¶ 66} Even given the correctness of the commission's conclusion that relator voluntarily limited the number of hours of her employment while employed with Integrity, the commission was, nevertheless, required to determine the applicability of Ohio Adm. Code 4125-1-01(F)(3)(b).
 {¶ 67} Turning to the SHO's order of June 17, 2001, that denied relator's second wage loss application, the commission addressed two time periods, i.e., July 16, 2001 to August 30, 2001, and September 1, 2001 to January 10, 2002, without explaining why the second wage loss claim should be divided and viewed as two periods of time. Ostensibly, after viewing the schedule of hours worked per week at Integrity, the number of hours worked per week began to dramatically increase during the week ending September 9, 2001, when relator worked 32 hours as opposed to the 20 hours worked the week before. Presumably, the SHO simply chose the beginning of September as a convenient date to mark the start of increased hours at Integrity which by the middle of the month was at full time or 40 hours per week. Apparently, the SHO understood that relator's return to full-time work at Integrity during September 2001 rendered irrelevant the issue of a good faith search for employment.
 {¶ 68} The SHO denied wage loss compensation for the weeks following September 1, 2001 on grounds that relator had failed to have Dr. Miller update the medical report within 90 days of June 26, 2001, the date of Dr. Miller's report submitted in support of the wage loss claim.
 {¶ 69} Ohio Adm. Code 4125-1-01(C)(3) states:
 {¶ 70} "Supplemental medical reports regarding the ongoing status of the medical restrictions causally related to the allowed conditions in the claim must be submitted to the bureau of workers' compensation or the self-insured employer in self-insured claims once during every ninety day period after the initial application, if the restrictions are temporary, or once during every one hundred eighty day period after the initial application, if the medical restrictions are permanent. * * *"
 {¶ 71} Clearly, the 90-day rule for submitting supplemental medical reports cannot be relied upon by the commission to bar wage loss compensation for the period July 16, 2001 to January 10, 2002.
 {¶ 72} The "initial application" within the meaning of the rule is the application filed January 16, 2002, which was the subject of the SHO's order of June 17, 2002. The commission did not adjudicate entitlement to wage loss compensation beyond January 10, 2002 which pre-dates the filing of the application. Ohio Adm. Code 4125-1-01(C)(3) imposes upon the claimant a requirement to submit a supplemental medical report during the 90-day period following the initial application and for each 90-day period thereafter. Presumably, where the claimant does not seek compensation during the 90-day period following the filing of the application, there can be no requirement that the claimant submit a supplemental medical report following the application.
 {¶ 73} Obviously, the commission should weigh the medical evidence submitted in support of the wage loss compensation even where the period of the wage loss claim pre-dates the filing of the application. However, the commission cannot reject the medical evidence in that situation by invoking the 90-day rule.
 {¶ 74} Here, the commission was free to accept or reject Dr. Miller's reports submitted in support of the second application as long as the commission had some reasonable basis for doing so. However, the commission cannot use Ohio Adm. Code 4125-1-01(C)(3)'s 90-day rule as a basis for rejecting the reports.
 {¶ 75} Furthermore, the commission's denial of wage loss compensation beginning July 16, 2001 based upon a finding of a failure to conduct a good faith effort to search for additional employment hours is flawed similarly to the first commission order. There is no contention here that relator was qualified for higher paying work and that she voluntarily limited her income by accepting a lower paying job. The issue on the second wage loss claim was again the number of hours relator had worked per week, not the hourly rate of the job she accepted. Thus, as noted with the first commission order, even if relator voluntarily limited the number of hours she worked per week, she may, nevertheless, be entitled to wage loss compensation as computed under Ohio Adm. Code4125-1-01(F)(3)(b). The commission failed to compute wage loss compensation under that rule or failed to explain why the rule is inapplicable.
 {¶ 76} In short, the commission abused its discretion with respect to both final orders denying both applications for wage loss compensation.
 {¶ 77} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate the December 13, 2001 and June 17, 2002 orders of its staff hearing officers and, in a manner consistent with this magistrate's decision, enter new orders adjudicating the two applications for wage loss compensation.
[1] See stipulated record at 58; see "statement of facts" in the commission's brief at 2.
[2] See stipulated record at 65-77, 96-103, and 131-139; see "statement of facts" in the commission's brief at 2-3.